No. 48,069

KANSAS COMMISSION ON CIVIL RIGHTS, *Appellant*, v. SEDGWICK COUNTY MENTAL HEALTH CLINIC-SOUTH CENTER, *Appellee*.

(556 P. 2d 180)

Opinion filed November 6, 1976.

*Roger W. Lovett*, of Topeka, argued the cause, and *Curt T. Schneider*, attorney general, and *Gary D. Jackson*, of Topeka, were with him on the brief for the appellant.

*Jack N. Turner*, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal by the Kansas Commission on Civil Rights (KCCR) from a district court order summarily denying an application for an order directing the Sedgwick County Mental Health Clinic-South Center to comply with a subpoena duces tecum issued by KCCR.

The proceeding grows out of a complaint filed October 18, 1972, with KCCR by Shirley Naylor, a black American, wherein she alleged she had been employed on July 3, 1972, at the Sedgwick County Mental Health Clinic at its South Center and that agency had on October 13, 1972, discriminated against her by reason of her race in terminating her employment as receptionist-secretary and clerk-typist, in violation of the Kansas Act Against Discrimination (K. S. A. 44-1001, *et seq.*, as amended).

According to KCCR's brief the complaint was not assigned to a field representative for investigation until November 18, 1974—twenty-five months after it was filed—and presumably the respondent agency at that time received its first notice of the complaint. It denied KCCR voluntary access to its records. On February 11, 1975, KCCR issued and served on respondent a subpoena duces

tecum pursuant to authority granted in K. S. A. 1974 Supp. 44-1004 (5). It requested production of the complainant's personnel file and the personnel files of all receptionist-secretaries and clerk-typists employed by respondent from July 3, 1972, to date. Respondent did not comply with the subpoena and on March 7, 1975, KCCR initiated the present proceeding pursuant to 44-1004 (5) for an order directing respondent to comply with it.

The matter came on for hearing May 16, 1975. We are told the hearing was conducted in chambers with no reporter present. Apparently no evidence was offered and the court had before it only KCCR's application for an order to enforce a subpoena to which was attached the Naylor complaint and the subpoena duces tecum. The court's denial order is contained in a journal entry prepared by respondent which merely recited:

"The Court being fully advised in the premises and after listening to arguments of counsel finds as follows:

"1. That no subpoena will be issued pursuant to the matter of Shirley Naylor vs. Sedgwick County Department of Mental Health-South Center; Kansas Commission on Civil Rights docket number E-169-73W."

This appeal ensued.

During the time period relevant to the issue here presented K. S. A. 44-1005 provided:

"...

"After the filing of any complaint by an aggrieved individual, the commission, or by the attorney general, the commission shall prior to investigation of the complaint, serve a copy on each of the parties alleged to have violated this act, and shall designate one of the commissioners to make, with the assistance of the commission's staff, *prompt* investigation of the alleged act of discrimination. . . ." (Emphasis added.)

The import of the foregoing is direction to KCCR to make *prompt* investigation of all complaints, prior to which the party complained against is to have notice of the matter by service upon it of a copy of the complaint. No particular time is specified in which the commission's actions are to be taken (Effective July 1, 1975, the foregoing statute was amended to require that the commission shall within seven days after the filing of a complaint by an aggrieved individual, the attorney general or by the commission, serve a copy upon any party alleged to have violated the act [Laws 1975, Chap. 264, § 4]).

Appellant argues it should not be stymied by the delay because its general authority to investigate is not dependent upon the filing of a complaint by an aggrieved individual and the proceeding is one

which is not adversary in nature. This is correct in the abstract; however, here a specific complaint by an allegedly aggrieved individual was made and it became the subject of the investigation. Appellant also asserts there is no contention the subpoena duces tecum called for the production of irrelevant matter or that it was unreasonable or oppressive. It urges there is no indication of slothfulness or dereliction on its part but says there was a backlog of fifteen months' cases when the Naylor complaint was filed; that meanwhile the commission's jurisdiction and mandate to investigate various types of complaints had been expanded so as to result in an increased caseload without a corresponding increase in personnel.

Appellee asserts that appellant's failure to serve *promptly* a copy of the complaint upon it irreparably prejudiced its rights. The contention is that these serious difficulties would be encountered by appellee: Attempting to locate personnel records after such a long period of time, scattered records, changing personnel, faded memories as a result of passage of time, loss of opportunity for early conciliation if the complaint had merit, and finally, the possibility of reinstatement and payment of back wages for more than two years.

Effective December 28, 1973, KCCR adopted the following rule: "A copy of the complaint and any amendments shall be promptly served by the commission on the respondent". (K. A. R. 21-41-11.) It cannot be said appellant complied either with its own rule or the statute directing prompt notification. It is, of course, highly desirable that a party complained against be notified of the complaint as soon as possible and that the complaint be investigated promptly. In discrimination cases this is particularly important because in them intent usually is a material factor, something not always easy to prove or disprove. K. S. A. 44-1005 has always provided: "The purpose of the investigation shall be to resolve any such problems *promptly*". (Emphasis added.) Thus a prime statutory objective is early resolution of the complaint which can include conciliation.

Here the complaint was filed five days after the alleged act of discrimination. A relatively simple and easily performed act, a short letter of transmittal to appellee of a copy of the complaint upon filing, would have given notice of the matter at issue and any claim to prejudice because of late investigation would have been largely dispelled. Appellee as a public body is obliged to follow the law and if it found some of its employees were in fact

violating the anti-discrimination act it could upon notice of any complaint take steps to conciliate and rectify the matter. Yet appellee was given no notice of any kind for more than twenty-five months and it had no opportunity for prompt conciliation.

In *Kansas Commission on Civil Rights v. Carlton*, 216 Kan. 735, 533 P. 2d 1335, we held that where there is a possibility of relevancy in documents subpoenaed and there is no showing that the subpoena is unreasonable or oppressive the statutes granting the power to subpoena should be liberally construed to permit inquiry. We were dealing there with enforcement of a subpoena duces tecum issued by KCCR and implicit in the decision is recognition of a district court's discretion in determining whether a particular subpoena is unreasonable or oppressive under the circumstances and should be enforced.

Under the particular facts we believe the trial court here, in which discretion is initially vested, could reasonably have found that appellee was prejudiced in the discharge of its own responsibilities by appellant's long delay in giving notice of the complaint against it. Hence we cannot declare abuse of discretion in the court's action.

The judgment is affirmed.

APPROVED BY THE COURT.

PRAGER, J., dissenting: I respectfully dissent. The result reached by the district court and the majority on the record before us is unduly harsh and is based upon a highly restrictive interpretation of the powers of the KCCR. At the outset it is clear to me that it is impossible for this court to resolve this case due to the state of the record on appeal. The appellee urges the court to view this as the commission's failure to prepare a record on which an appeal could be based. I disagree. Clearly the trial court failed to comply with Supreme Court Rule No. 116, which requires a district judge to make findings of fact and conclusions of law in all contested matters where there is no jury. The requirements of this rule are mandatory. The purpose of the rule is to advise the parties, as well as this court, of the reasons for the decision and the standards applied by the court which governed its determination and persuaded it to arrive at the decision. (*City of Council Grove v. Ossmann*, 219 Kan. 120, 546 P. 2d 1399.) In the past the court has not hesitated to reverse and remand cases for failure to comply with this rule. (*Hendrickson v. Drotts*, 219 Kan. 435, 548 P. 2d 465;

*Mies v. Mies*, 217 Kan. 269, 535 P. 2d 432.) There is simply nothing in the record to show how or why the trial court reached its decision that the KCCR should be denied the right to exercise its subpoena powers in this case.

I further disagree with the majority's holding that the KCCR as a matter of law did not act "promptly" in issuing the subpoena in question. "Promptly" is a relative term. Determination of what is "prompt" action requires the application of equitable principles and consideration of all of the relevant facts and circumstances for the purpose of doing justice for all the parties involved. The district court and the majority have apparently resolved this question in a vacuum of facts without having before it evidence to show that the appellee was or was not prejudiced by the commission's delay in investigating the complaint.

Guidance on this point can be found in two cases decided by the United States Court of Appeals for the Fifth Circuit. In *Chromcraft Corp. v. United States Equal Emp. Op. Com'n*, 465 F. 2d 745, it was held that a delay of more than one year in serving an employer with notice of a discrimination charge was not unreasonable, where the delay was the result of insufficient personnel to process the workload of the EEOC. At the time this case arose the Civil Rights Act of 1964 (42 U. S. C. A. 2000, *et seq.*) contained a provision calling for "prompt" investigation of complaints similar to that of old K. S. A. 44-1005. The court refused to apply the doctrine of laches to a governmental agency acting to vindicate a public right. There was, of course, no statute of limitations involved. In finding there was not an unreasonable delay the court relied heavily on the excessive backlog of cases before the EEOC and the fact that there was no evidence of a dilatory attitude on the part of the commission.

In *E. E. O. C. v. Exchange Security Bank*, 529 F. 2d 1214, no unreasonable delay was found in a case involving an unexplained delay of twenty-one months in the issuance of a subpoena, coupled with an additional delay of eighteen months in seeking enforcement of the subpoena. The decision was based in part upon *Chromcraft*. The court also relied upon the federal Administrative Procedure Act (5 U. S. C. A. 706), which limits judicial review of agency action to require a showing of prejudice before such action can be set aside for lack of punctuality. Passage of time alone did not make the delay unreasonable. The court found no suggestion of "slothfulness, lethargy, inertia or caprice."

Similarly, in the case at bar, no prejudice has been shown by the appellee. The prejudicial effects mentioned by the majority are matters outside the scope of the record. These apparently come from the brief of appellee and oral argument. There is no *evidence* to show whether the appellee's records sought by the subpoena are unavailable or whether the granting of a subpoena would otherwise prejudice the rights of the appellee.

A final point should be noted with regard to the order of the district court. This order appears to be injunctive in nature, prohibiting the KCCR from issuing further subpoenas in this matter. In my judgment the district court abused its discretion in issuing such an order. The KCCR, under K. S. A. 44-1005, may on its own initiative investigate possible acts of discrimination. It has the same powers during this type of investigation as are conferred when an individual complaint is involved. Among these powers is the power of subpoena. Unless a subpoena is found to be unreasonable or oppressive, the statutes granting subpoena power are to be liberally construed to permit inquiry. (*Kansas Commission on Civil Rights v. Carlton*, 216 Kan. 735, 533 P. 2d 1335.) It is therefore clear that the KCCR could on its own motion conduct an investigation of the incident in question here. The order of the trial court was overly broad and improper under the circumstances.

The opinion of the majority results in a summary denial of relief to a complainant who has no control over the time schedule of the KCCR. The complainant has been made the victim of the delay of a third party, delay which may well have been unavoidable and which may not have prejudiced the rights of the appellee. The majority notes that a prime statutory objective of the Kansas Acts Against Discrimination is early resolution of complaints. There is no evidence in the record tending to indicate an earlier resolution was possible here. Another prime objective of the statute is the elimination and prevention of discrimination and to assure equal opportunities to persons covered by the act. The majority opinion serves only to stifle this objective. I would reverse the case with instructions to the trial court to conduct an evidentiary hearing and make findings of fact and conclusions of law as required by Supreme Court Rule No. 116.

KAUL and MILLER, JJ., join in the foregoing dissenting opinion.