NEVADA COMMISSION ON EQUAL RIGHTS OF CITIZENS, APPELLANT AND CROSS–RESPONDENT, v. LINDSAY SMITH, RESPONDENT AND CROSS–APPELLANT.

No. 4766

November 12, 1964                    396 P.2d 677

*Harvey Dickerson,* Attorney General, and *Daniel R. Walsh,* Deputy Attorney General, of Carson City, for Appellant and Cross-Respondent.

*Streeter, Sala, Richards & McAuliffe,* of Reno, for Respondent and Cross-Appellant.

*William P. Horgan* and *Leslie B. Gray,* of Reno, for National Council of the Churches of Christ, in the U.S.A., as Amicus Curiae.

## O P I N I O N

By the Court, THOMPSON, J.:

This case involves the constitutionality of the statute creating the Nevada Commission on Equal Rights of Citizens, the legality of that commission's power to subpoena witnesses, and the enforcement procedure available to the commission should a subpoenaed witness fail to appear and testify.

The controversy arose because of the commission's desire to question an officer of a corporation about its racial policies and practices. The relevant facts are few. El Capitan Lodge and Casino, a corporation, operates a place of public accommodation at Hawthorne, Nevada. The commission issued a subpoena and caused it to be served upon Lindsay Smith, an officer and stockholder of El Capitan, commanding Smith to appear and testify before the commission at its meeting scheduled for February 27, 1964, at the courthouse in Reno, Nevada. Smith did not appear. Instead he filed suit against the commission, seeking a judicial declaration that the commission was not constitutionally created, nor its subpoena power constitutionally conferred. In addition he sought a permanent injunction against any effort by the

commission to compel his testimony. He was successful in each respect below, and the commission appeals.[1]

The Nevada Commission on Equal Rights of Citizens was created by legislative enactment in 1961. NRS 233.010–233.080. The public policy sought to be advanced is declared in the following language: "It is hereby declared to be the public policy of the State of Nevada to protect the welfare, prosperity, health and peace of all the people of the state, and to foster the right of all persons reasonably to seek, obtain and hold employment and housing accommodations, and reasonably to seek and be granted services in places of public accommodation without discrimination, distinction or restriction because of race, religious creed, color, national origin or ancestry." (NRS 233.010(1).)

The members of the commission are appointed by the governor and serve at his pleasure without compensation. The functions of the commission are dual. First, it is to effectuate the declared public policy to afford information to the people concerning actual and alleged practices of discrimination and acts of prejudice "which may provide the basis for formulating statutory remedies of equal protection and opportunity for all citizens in this state." Accordingly the commission is directed to investigate complaints and to initiate its own investigations of tensions, practices of discrimination and acts of prejudice of a racial, religious or ethnic nature. To that end the commission is invested with authority to hold private or public hearings and to subpoena witnesses. It must report its findings to the governor and to the Legislative Counsel Bureau, and shall make recommendations. The second function of the commission is to foster mutual understanding and respect among all racial, religious and ethnic groups in the manner described in NRS 233.060(1), (2), (3), (5), (6), (7).

---

[1] Smith also claimed damages for a "malicious abuse of process." The defendant's motion to dismiss this claim was granted, and Smith has filed a cross-appeal from the dismissal order. In view of our disposition of the commission's appeal, it is apparent that there can be no legal basis to support Smith's claim for damages. Whitehead v. Southern Discount Company, 109 Ga.App. 126, 135 S.E.2d 496.

It is apparent that the dual functions of the commission are to be accomplished primarily through investigation and fact finding. It is not given the power to legislate or make rules, nor may it adjudicate. It does not accuse, issue orders, punish or impose sanctions. Cf. State v. Medical Examiners, 68 Nev. 455, 235 P.2d 327; Nevada Tax Commission v. Hicks, 73 Nev. 115, 310 P.2d 852. Rather, the underlying purpose is to develop information which may be useful to the executive in the performance of his constitutional duty to recommend to the legislature "such measures as he shall deem expedient" (Nev. Const., art. 5, § 10), and also useful to the legislature in formulating future legislation.

The act is not constitutionally infirm. The power to legislate has not been delegated. Ginocchio v. Shaughnessy, 47 Nev. 129, 217 P. 581; Annot., 79 L.Ed. 474. The subpoena power given the investigatory commission does not offend due process. Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307; In re Groban, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376. Nor (contrary to the lower court's view) does the act violate the "separation of powers" concept. Nev. Const., art. 3, § 1.[2] It is established law that constitutional provisions, bearing upon the separation and delegation of powers, are not violated by authorizing an administrative agency to obtain information upon which future legislation may be formulated. 1 Davis, Administrative Law Treatise, 66; Annot., 27 A.L.R.2d 1208. Nor are those provisions violated when the legislature confers upon the executive the power to appoint the administrative agency and invests that agency with the power of subpoena. In re Di Brizzi, 303 N.Y. 206, 101 N.E.2d 464. Indeed, many administrative agencies in Nevada are

---

[2]Nev. Const., art. 3, § 1 reads: "The powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,—the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases herein expressly directed or permitted."

appointed by the governor and enjoy subpoena power. Among them are Nevada State Board of Public Accountants, Nevada State Board of Chiropractic Examiners, State Contractors Board, Board of Dental Examiners, Board of Dispensing Opticians, Nevada Gaming Commission, Board of Medical Examiners, State Board of Nursing, State Board of Sheep Commissioners, Nevada Athletic Commission, Colorado River Commission, State Dairy Commission, Nevada Industrial Commission, Nevada Real Estate Advisory Commission, Public Service Commission, and Nevada Tax Commission.

Notwithstanding the foregoing, Smith insists that the subpoena power given the commission is constitutionally deficient because of the failure to prescribe the limits within which the power is to be exercised. The contention is unsound. The grant of power is in the following language: "The commission may subpoena witnesses and require the production of any evidence relevant to any hearing conducted by the commission." The limitations upon that power are found in NRS 233.070 (1) : "The commission shall receive and investigate complaints and initiate its own investigation of tensions, practices of discrimination and acts of prejudice against any person or group because of race, color, creed, national origin or ancestry, and may conduct private or public hearings with regard thereto." The questions to the subpoenaed witness must, of course, be pertinent and relevant to the purposes for which the commission is authorized to conduct hearings. A "fishing expedition" into other matters is not authorized. The limitation meets constitutional requirements. Pope & Talbot Inc. v. Smith, 216 Or. 605, 340 P.2d 960 ; Warren v. Marion County, 222 Or. 307, 353 P.2d 257; Application of Waterfront Commission of New York Harbor, 32 N.J. 323, 160 A.2d 832; cf. Watkins v. U.S., 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273; and Sweezy v. New Hampshire, 354 U.S. 234, 77 S.Ct. 1203,

1 L.Ed.2d 1311, where, inter alia, the matter of pertinency is discussed.[3]

Finally we turn our attention to the problem of enforcement. The statute with which we are dealing does not expressly confer enforcement powers upon the commission, nor are we willing to imply such power though some courts have done so. See Ex parte Sanford, 236 Mo. 665, 139 S.W. 376; cases cited in 41 Tex.L.Rev. 874. Normally the power of an administrative agency to issue subpoenas and the power to enforce them through citation for contempt, are treated as separate and functionally unrelated problems. We think it appropriate that they are so treated. The power of citation for contempt is best lodged in a court of competent jurisdiction, where judicial safeguards will attend the hearing. The Supreme Court of the United States has declared it permissible for a court to enforce an administrative subpoena issued for investigatory purposes—if the purpose is lawfully authorized and within the legislative power to command. Oklahoma Press Publishing Company v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614. In principle the Nevada case of Ex parte Hedden, 29 Nev. 352, 90 P. 737, is in accord, though it involved a grand jury exercising adjudicatory as well as investigatory functions. The disobedience of a subpoena duly served is deemed contempt, NRS 22.010 (4), and a court proceeding on affidavit, citing the unwilling witness to show cause why he should not be punished for contempt, is the proper method of enforcement. Ex parte Hedden, supra. The commission may lawfully proceed to enforce subpoenas issued by it in that manner.

Accordingly we reverse the judgment below declaring

[3]The respondent Smith relies heavily upon the Watkins and Sweezy opinions. Neither is in point. Those cases relate to constitutional safeguards available to a witness who has appeared and submitted himself to interrogation. That matter is not reached in the instant case, for Smith simply refused to appear; nor will we assume that his First Amendment rights would have been violated (as in Watkins and Sweezy) had he submitted to questioning.

unconstitutional the statute creating the Nevada Commission on Equal Rights of Citizens; we reverse the declaration that the commission's subpoena power is void and unconstitutionally conferred; we reverse the judgment permanently enjoining any effort by the commission to compel Smith's testimony; and we affirm the judgment dismissing Smith's claimed damages for malicious abuse of process.

BADT, C. J., and McNAMEE, J., concur.